# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY K. BELLES, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | 21-322 |
| | ) | |
| PORTO EXIM USA, LLC d/b/a Armina Stone | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

AND NOW COMES Plaintiff, Gregory K. Belles, ("Plaintiff" or "Mr. Belles"), by and through his undersigned counsel, and brings this Complaint seeking legal and equitable relief for disability discrimination, retaliation and wrongful termination against Defendant Porto Exim USA, LLC d/b/a Armina Stone ("Defendant" or "Armina") in violation of the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"), as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"). Mr. Belles further asserts that he was terminated in retaliation for seeking and previously obtaining workers' compensation benefits. Mr. Belles states and avers the following:

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action is authorized and instituted pursuant to the ADA, ADAAA, and the PHRA.

2. Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western District of Pennsylvania has supplemental jurisdiction over Mr. Belles' state-law claims, which

arise from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

3. The unlawful employment practices and wrongful termination were committed by Armina, where Mr. Belles worked as an Installer in Allegheny County from Armina's office located in Allegheny County. Therefore, the United States District Court for the Western District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

4. Plaintiff timely exhausted his administrative remedies by filing a charge against Defendant on July 22, 2020 jointly with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 533-2020-01932. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein. On December 15, 2020, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising him of the right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

5. At all relevant times hereto, the County was an employer within the meaning of the ADA, ADAAA and PHRA.

**PARTIES**

6. Gregory Belles is a 44-year-old male individual who resides at 2391 Rochester Road, Sewickley, PA 15143.

7. At all relevant times hereto, Defendant is and was a Virginia Limited Liability Company registered to do business within the state of Pennsylvania with a principal place of business in Allegheny County at 780 Route 910 Cheswick, Pennsylvania, 15024.

8. Defendant routinely conducted business in Allegheny County, Pennsylvania.

**FACTS**

9. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

10. Mr. Belles began his employ with Armina in October of 2017 as an Installer.

11. In late November 2018, while carrying stone as part of his work duties, Mr. Belles injured his back.

12. Mr. Belles filed a workers' compensation claim after being diagnosed with a lumbar disc herniation at the L5-S1level that contacted an already exited left L5 root in the foramen and a smooth midline herniation at L1-L2 level resulting in mild neural canal stenosis.

13. Mr. Belles' was treated conservatively with physical therapy and was granted workers' compensation leave.

14. Mr. Belles was directed to return to work on April 1, 2019 but was to "remain on light duty" as dictated on February 26, 2019 work letter.

15. Understanding these limitations and his high risk for reinjury, Mr. Belles approached his operations manager, Greg Geibel to request to be transferred to the position of a Templator.

16. Because templating consists of making a pattern or a template in the field, typically using strips of luan (thin plywood) or coroplast (corrugated high-density plastic), it would enable Mr. Belles to comply with the lifting restrictions recommended by his physician and assure he was not placing himself at greater risk.

17. Not only did Mr. Geibel flat out deny this request, suggesting that it would "ruffle feathers" with a more senior installer who wanted the position, Mr. Geibel and Armina refused to

engage Mr. Belles in the interactive process required to determine whether they could accommodate his disability.

18. Mr. Belles repeatedly asked to be moved to the Templator position and was repeatedly denied.

19. Mr. Belles made such requests verbally to Mr. Geibel following his initial request in April of 2019 including after September 25, 2019.

20. At or around this time, Greg Geibel made a statement to a former Install Manager at Armina that Mr. Belles' was a "liability" to the Company due to his injury and insinuated a desire to get rid of him when discussing an upcoming layoff.

21. Mr. Belles was able to work until late January 2020 without additional issue.

22. In late January, Mr. Belles noticed a substantial increase in his low back pain and was prescribed oral steroids.

23. He needed to take days off in late January and early February for treatment and advised Mr. Geibel of the same.

24. In late January 2020, Mr. Belles' commenced a one-week workers' compensation leave from January 28 through February 4, 2020 for aggravation of his previous work-related back injury.

25. On March 23, 2020, the Governor Wolf issued a mandatory "Stay at Home" Order to help stop the spread of COVID-19.

26. Mr. Belles received a text message prior thereto indicating that the Company was shut down as a result of the pandemic.

27. Mr. Giebel texted Mr. Belles and the other employees to reassure them that their jobs were safe, and Mr. Belles appropriately began collecting unemployment compensation benefits.

28. Thereafter, Armina obtained a waiver from the Governor's office, allowing the Company to resume certain projects that were deemed to be "essential."

29. On Monday, April 27, 2020, Mr. Belles received a text from Mr. Geibel asking him if he was good to come back on Monday, May 4, 2020.

30. Mr. Belles responded "*Be back Monday.  I'd like a copy of the guidelines your manded to follow from CDC during this pandemic,*" indicating he was returning to work and wanted to take the required precautions, given that the job requires going into people's homes and businesses.

31. Mr. Geibel responded, "*we do not yet have the volume of work needed to bring everyone back.  Trucks will be limited to only 10.  You were the last to respond and until we regain our sales and install volume we do not have a spot for you.  **I fully intend to bring you back** but cannot right at this moment.  Your unemployment claim can continue.  We will not obstruct it*." (emphasis added)

32. Despite this representation, Armina represented to the Pennsylvania Unemployment Compensation Office that Mr. Belles was returning to work, interfering with his benefits and causing them to lapse on May 5, 2020.

33. In the meantime, Mr. Belles was eagerly attempting to return to work.

34. He made repeated requests to Mr. Geibel to return to work including on May 8 and May 11.

35. On May 11, Mr. Giebel responded indicating that they were not operating at capacity and, for the first time stating that they "cannot guarantee a return." Their conversation follows:



36. As shown above, Mr. Geibel refused to call Mr. Belles to discuss the matter with him.

37. Mr. Belles was an exemplary employee, performing upwards of 1440 installs with Armina without a single customer complaint.

38. Mr. Belles regularly received commendable performance reviews.

6

39. Yet, Mr. Geibel terminated him via text message on or about May 8, 2020 without possessing a non-discriminatory, non-retaliatory or legitimate business reason.

40. In the meantime, Armina returned at least eleven (11) other, non-disabled installers to their positions, each of which has less experience with Armina and less experience overall.

41. Upon information and belief, Armina was interviewing potential candidates for Mr. Belles' position at or around the same time they were refusing to return him to work.

42. Armina then hired at least two (2) installers in June of 2020, approximately one month after Mr. Belles' was terminated due to lack of business.

43. Armina knew of Mr. Belles' desire to return to the Company and refused to return him.

44. Non-disabled employees were not terminated for similar reasons.

45. Employees who previously sought workers compensation benefits were not terminated for similar reasons.

46. As such, Armina terminated Mr. Belles for (1) seeking benefits and treatment for a work-related injury; (2) for suffering from disabilities and/or being perceived or regarded as being disabled; (3) continuing to require an accommodation; (4) potentially requiring a new accommodation due to his worsening condition; (5) potentially requiring a leave of absence; and/or (6) the substantial risk Mr. Belles' condition would worsen or he would further injure himself if he continued to work as an Installer.

47. This conduct has caused our client irreparable harm and humiliation, lost wages, medical expenses, emotional distress, damages, and constitutes clear discrimination, retaliation and wrongful termination.

48. At all times relevant hereto, Defendant was Plaintiff's employer, and was an employer within the meaning of and subject to anti-discrimination and anti-retaliation statutes.

49. Plaintiff is in a protected class under the ADA, ADAAA, PHRA and Pennsylvania Workers' Compensation Act at the time the acts of discrimination, retaliation, and wrongful termination occurred.

50. At all relevant times hereto, Armina acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

51. Armina's aforementioned conduct and disparate treatment, discrimination retaliation and wrongful termination of Plaintiff based on his disability and request for reasonable accommodation were in violation of the ADA, ADAAA, and the PHRA.

52. Plaintiff is in a protected class under the ADA, ADAAA, and PHRA at the time the acts of discrimination and retaliation occurred.

**COUNT I**
**DISCRIMINATION, RETALIATION AND WRONGFUL DISCHARGE – AMERICANS WITH DISABILTIES ACT AND AMENDMENTS THERETO ("ADA" AND "ADAAA")**

53. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

54. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA and or ADAAA because he has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because he had a record of such impairment.

55. Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because he was regarded as and/or perceived by Defendant and their

8

agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

56. However, Plaintiff could complete the functions of his position as a Installer with a reasonable accommodation.

57. Plaintiff requested to be moved to the position of a Templator several times after September 25, 2019 and was repeatedly denied this request.

58. As such, the foregoing conduct by Defendant, including the failure to engage in the interactive process with Plaintiff a constitutes unlawful discrimination and retaliation against Plaintiff because of his disability and/or perceived disability.

59. Additionally, after Plaintiff was required to two leaves of absence, including a recent one in January of 2020, Defendant seized upon the COVID-19 pandemic to use as a pretextual excuse not to return Mr. Belles to work, anticipating that his condition was worsening and he would either (1) continue to require an accommodation; (2) require a new accommodation; (3) require a leave of absence; or (4) further injure himself if he continued to perform the duties of an Installer.

60. Defendant, instead, returned other non-disabled workers and hired at least two additional Installers only **one month** following Mr. Belles' termination to replace Mr. Belles, because of his worsening condition.

61. As a result of Defendant's unlawful disability discrimination, retaliation and wrongful termination, Mr. Belles has suffered damages as set forth herein including substantial lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## DISCRIMINATION, RETALIATION AND WRONGFUL DISCHARGE – PENNSYLVANIA HUMAN RELATIONS ACT

62. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

63. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT II arises out of the same facts, events and circumstances as in the above COUNT I and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

64. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

65. By engaging in the creation and fostering of a discriminatory and retaliatory environment based on Mr. Belles' disability, Defendant violated those sections of the PHRA which prohibits discrimination and retaliation based upon disability and/or perceived disability regarding the continuation and tenure of employment.

66. Defendant repeatedly failed to engaged Mr. Belles' in the interactive process to prevent further injury to him.

67. Defendant then seized upon the COVID-19 pandemic to use as a pretextual excuse not to return Mr. Belles to work, anticipating that his condition was worsening and he would either (1) continue to require an accommodation; (2) require a new accommodation; (3) require a leave of absence; or (4) further injure himself if he continued to perform the duties of an Installer.

68. Defendant's failures were intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

69. Defendant's discriminatory conduct towards Mr. Belles and wrongful termination of him remains a violation of the PHRA.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## WORKERS' COMPENSATION RETALIATION

70. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

71. Defendant, through its agents, employees and/or servants, were made of aware of Plaintiff's medical condition and work-related injuries sustained prior to his termination.

72. Plaintiff was terminated in retaliation for seeking workers' compensation benefits and/or in anticipation that additional benefits would be required in the future.

73. Defendant's retaliatory conduct and actions include but are not limited to terminating Plaintiff due to sustaining work-related injuries and seeking workers' compensation benefits.

74. The actions and/or conduct in terminating Plaintiff for the injuries sustained at work and within the coverage of the Pennsylvania Workers' Compensation Act ("Act") and for asserting his rights under the Act abridges a significant and recognized public policy as articulated in *Shick v. Shirey*, 522 Pa. 590 (1998).

75. As a result of the workers' compensation retaliation and wrongful termination, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, medical expenses, and pain and suffering, and is entitled to

compensatory damages for these injuries, in addition to the tangible economic losses he has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the ADA, ADAAA, and PHRA;

b. That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date: March 10, 2021	Respectfully Submitted,

*/s/ Stephanie L. Solomon*
Stephanie L. Solomon, Esquire
Pa. I.D. 208056
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street
Suite 401
Pittsburgh, PA  15219
412.760.7802
ssolomon@hkm.com

**JURY TRIAL DEMANDED**